1

2

3

4

5

6

7

8                    UNITED STATES  DISTRICT COURT

9                    Northern District of California

10

11

12      FIRST TIME VIDEOS, LLC,                    No. C 11-3822 MEJ

13                       Plaintiff,         **ORDER GRANTING PLAINTIFF'S**
           v.                              **EX PARTE APPLICATION FOR**
                                           **LEAVE TO TAKE LIMITED**
14      DOES 1-95,                         **EXPEDITED DISCOVERY**

15                       Defendants.         **Docket No. 7**
        _____/

16

17                          **I.   INTRODUCTION**

18          Plaintiff OpenMind Solutions, Inc. ("Plaintiff") has filed an ex parte Application pursuant to

19   Federal Rules of Civil Procedure ("Rule") 26 and 45, requesting leave to take expedited discovery to

20   determine the identity of the 95 Doe Defendants (collectively, "Defendants") named in this action.

21   Dkt. No. 7 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's

22   Application.

23                          **II.   BACKGROUND**

24          On September 21, 2011, Plaintiff filed and Amended Complaint ("FAC" against 95 Doe

25   Defendants, alleging that Defendants illegally reproduced and distributed a work subject to

26   Plaintiff's exclusive license, ("*FTV Danielle: Candid Series - My Amateur Hardcore*"), using an

27   internet peer-to-peer file sharing network known as BitTorrent, and thereby violated the Copyright

28   Act, 17 U.S.C. §§ 101-1322.  FAC ¶¶ 7, 24, 29, Dkt. No. 6.  Plaintiff asserts that because the alleged

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    infringement occurred on the internet, Defendants acted under the guise of their Internet Protocol

2    ("IP") addresses rather than their real names. *Id.* at ¶ 8. As a result, Plaintiff contends that it could

3    not determine Defendants' true identities without procuring the information from Defendants'

4    respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or

5    entity. *Id.* Consequently, Plaintiff has filed the present request that the Court grant it expedited

6    discovery to issue subpoenas to the relevant ISPs so that the ISPs would produce the name, address,

7    telephone number, and email address information attached to each IP address that Plaintiff had

8    compiled through its own investigations. Pl.'s App. at 3.

9                                    **III.  LEGAL STANDARD**

10          Pursuant to Rule 26(d)(1), a court may authorize early discovery before the Rule 26(f)

11   conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit

12   generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g.,*

13   *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011);

14   *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause

15   may be found where the need for expedited discovery, in consideration of the administration of

16   justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court

17   must perform this evaluation in light of "the entirety of the record . . . and [examine] the

18   reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation &

19   quotation marks omitted). In determining whether there is good cause to allow expedited discovery

20   to identify anonymous internet users named as doe defendants, courts consider whether: (1) the

21   plaintiff can identify the missing party with sufficient specificity such that the Court can determine

22   that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has

23   identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against

24   defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a

25   reasonable likelihood of being able to identify the defendant through discovery such that service of

26   process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal.

27   1999).

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

2

**IV.   DISCUSSION**

**A.      Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

Under the first factor, the Court must examine whether Plaintiff has identified the Defendants

with sufficient specificity, demonstrating that each Defendant is a real person or entity who would

be subject to jurisdiction in this Court. *Id.* at 578.  Here, Plaintiff proffers that it retained Media

Copyright Group, LLC ("MCG"), which utilized forensic software to identify Defendants' IP

addresses on the date and time that they engaged in the alleged distribution of *FTV Danielle: Candid*

*Series - My Amateur Hardcore* via the BitTorrent protocol, and has compiled the information into a

log attached as Exhibit A to Plaintiff's FAC.  Pl.'s App. at 7; FAC, Ex. A; Hansmeier Decl. ¶¶ 2, 15-

21, Dkt. No. 7-1.  Plaintiff explains that Defendants gained access to the internet only by setting up

an account through various ISPs, and that by providing the ISPs the information detailed in Exhibit

A, the ISPs can look up the identity of the Defendants by reviewing their respective subscriber

activity logs.  Pl.'s App. at 7; Hansmeier Decl. ¶¶ 22, 27.  Additionally, Plaintiff indicates that it

used geolocation technology to trace these IP addresses to a point of origin within the state of

California.  FAC ¶ 3.  Taken together, the Court finds that Plaintiff has come forward with sufficient

information demonstrating that the Defendants are real persons or entities who may be subject to

jurisdiction in this Court.  *See Pink Lotus Entm't. LLC v. Does 1-46*, 2011 WL 2470986, at \*3 (N.D.

Cal. June 21, 2011) (finding that the plaintiff met its burden to identify the Doe defendants with

sufficient specificity by identifying the unique IP addresses of individuals engaged in P2P sharing

and using geolocation technology to trace the IP addresses to a point of origin within the state of

California); *MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at \*2 (N.D. Cal. Aug. 15, 2011)

(finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting

a chart listing each of the defendants by the IP address assigned to them on the day it alleged the

particular defendant engaged in the infringing conduct).

**B.      Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the

Defendants.  *Columbia Ins. Co.*, 185 F.R.D. at 579.  "This element is aimed at ensuring that

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   plaintiffs make a good faith effort to comply with the requirements of service of process and

2   specifically identifying defendants." *Id*.  Here, Plaintiff contends that it has exhausted all possible

3   means to find Defendants' names, addresses, phone numbers, and email addresses.  Pl.'s App. at 7.

4   In support, Plaintiff cites to paragraphs 18 through 21 and 24 through 26 of Mr. Hansmeier's

5   Declaration. *Id*.  Reviewing Mr. Hansmeier's testimony, he states that as a technician for MCG, he

6   used "proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring

7   of the BitTorrent-based swarm involved in distributing the copyrighted file relevant to Plaintiff's

8   action."  Hansmeier Decl. ¶ 16.

9       First, to locate swarms[1] where peers were distributing *FTV Danielle: Candid Series - My*

10  *Amateur Hardcore*, MCG located torrent files on torrent indexing sites and internet file-sharing

11  forums sharing the names of Plaintiff's copyrighted works.  *Id*. ¶¶ 18-19.  To accomplish this, MCG

12  utilized three methods.  According to Mr. Hansmeier, the most common means of locating the

13  swarm is to connect to a BitTorrent tracker, which is a server that contains an updated list of peers in

14  the swarm.  *Id.* ¶ 19.  A typical torrent file contains a list of multiple trackers associated with the

15  underlying file.  *Id.*  Other means of locating the swarm include using Distributed Hash Tables,

16  which allow each peer to serve as a "mini-tracker" and Peer Exchange, which allows peers to share

17  data about other peers in the swarm without the use of a tracker.  *Id.*

18      After locating the swarm, MCG uses its software "to conduct an exhaustive real time

19  'fingerprint' of the swarm," which includes the date and time when a portion of *FTV Danielle:*

20  *Candid Series - My Amateur Hardcore* was downloaded successfully to an infringer's computer, the

21  time and date the infringer was last successfully connected to the BitTorrent network, the IP address

22  assigned to the infringer's computer, the size of the file, the percent of the file downloaded, and the

23

24      [1]P2P networks distribute infringing copies of copyrighted works with file sharing software
    such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
25  digital file of a work available to the public from his or her computer.  Hansmeier Decl. ¶¶ 8-11.
    This file is referred to as the first "seed."  *Id.*  ¶ 9.  Other users, who are referred to as "peers," then
26  access the Internet and request the file.  *Id.* ¶¶ 9, 11.  These users engage each other in a group,
27  referred to as a "swarm," and begin downloading the seed file.  *Id.*  As each peer receives portions of
    the seed, that peer makes those portions available to other peers in the swarm.  *Id.*  ¶ 11.
28

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    percent of the file on the infringer's computer which is available at that moment for copying by

2    other peers. *Id.* ¶ 20.  According to Mr. Hansmeier, "[a]fter recording granular level data about

3    every peer in the swarm, the next step is to carefully and thoroughly review the data produced by

4    MCG's proprietary forensic software to determine what peers were actually involved in illegally

5    reproducing and distributing Plaintiff's Video." *Id*. ¶ 25.  Toward that end, he explains, "[w]hen a

6    verified peer was located who was [making] Plaintiff's copyrighted Video available for distribution

7    and reproduction via the BitTorrent protocol, I downloaded and retained both the torrent files and

8    the actual digital reproductions being offered for distribution to verify that the digital copies being

9    distributed in the swarm were in fact copies of the Plaintiff's copyrighted Video." *Id*.  Particularly,

10   Mr. Hansmeier downloaded the file and compared it to an actual copy of *FTV Danielle: Candid*

11   *Series - My Amateur Hardcore* to confirm that the file was a "substantially-similar reproduction of

12   the copyrighted Video." *Id*.  As part of this process, MCG also traced each offending IP address to

13   specific ISPs. *Id*. ¶¶ 22-24.

14          Based on Mr. Hansmeier's explanation of the foregoing steps as utilized to investigate

15   Defendants' activity with respect to *FTV Danielle: Candid Series - My Amateur Hardcore* on the

16   BitTorrent protocol, the Court finds that Plaintiff has sufficiently described its efforts to identify

17   Defendants.

18   **C.      Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

19          Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

20   whether Plaintiff's Complaint would likely survive a motion to dismiss. *Columbia Ins. Co.*, 185

21   F.R.D. at 579.  In its Complaint, Plaintiff has asserted a federal copyright infringement claim and a

22   claim for civil conspiracy under California law.

23          To state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid

24   copyright, and (2) copying of constituent elements of the copyrighted work that are original. *Rice v.*

25   *Fox Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv.*

26   *Co.*, 499 U.S. 340, 361 (1991)).  "To be liable for direct infringement, one must 'actively engage in'

27   and 'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   1199 (N.D. Cal. 2004).  Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *FTV*

2   *Danielle: Candid Series - My Amateur Hardcore* is the subject of a copyright registration

3   application pending in the United States Copyright Office and that Plaintiff is the exclusive

4   rightsholder of the distribution and reproduction rights of *FTV Danielle: Candid Series - My*

5   *Amateur Hardcore*.  FAC ¶¶ 6, 25.  Plaintiff has also alleged that the Defendants reproduced and

6   distributed *FTV Danielle: Candid Series - My Amateur Hardcore* via BitTorrent to numerous third

7   parties via the same swarm.  *Id.* ¶ 29.  Additionally, Plaintiff has alleged that Defendants actively

8   engaged in or directly caused the copying by completing each of the steps in the BitTorrent file-

9   sharing protocol, including intentionally downloading a torrent file particular to *FTV Danielle:*

10  *Candid Series - My Amateur Hardcore*, loading that torrent file into the BitTorrent client, entering a

11  BitTorrent swarm particular to *FTV Danielle: Candid Series - My Amateur Hardcore*, and

12  ultimately, downloading and uploading pieces of a *FTV Danielle: Candid Series - My Amateur*

13  *Hardcore* file to eventually obtain a whole copy of the file.  FAC ¶¶ 17-19, 29.  Based on these

14  allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright infringement and

15  set forth sufficient supporting facts to survive a motion to dismiss.

16      Plaintiff has also asserted a claim for civil conspiracy pursuant to California law.  Whether

17  this claim would survive a motion to dismiss, however, presents a closer question.  At least one

18  other court in this District has recognized that a civil conspiracy claim does not provide a

19  substantive basis for liability under California law, but is merely a mechanism for imposing

20  vicarious liability.  *Millennium TGA, Inc. v. Does 1-21*, 2011 WL 1812786, at *2 (N.D. Cal. May 12,

21  2011).  As the *Millennium* court noted, "[w]hile the Ninth Circuit has not addressed the subject,

22  other district courts have held that state law civil conspiracy claims based on copyright infringement

23  are preempted."  *Id*.  Thus, there is some doubt as to the viability of Plaintiff's civil conspiracy

24  claim.  Nevertheless, because Plaintiff has sufficient pled a copyright infringement claim – which is

25  enough to satisfy the third factor – the Court need not determine the fate of Plaintiff's civil

26  conspiracy claim at this juncture.

27

28

1 | **D.**     **Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

2      The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable

3 likelihood that the discovery it requests will lead to the identification of Defendants such that it may

4 effect service of process. *Columbia Ins. Co.*, 185 F.R.D. at 580. As indicated above, Plaintiff

5 contends that the key to locating Defendants is through the IP addresses associated with the alleged

6 activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address

7 to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the

8 information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this

9 case. Hansmeier Decl. ¶¶ 22-23; Gibbs Decl. ¶ 4, Dkt. No. 7-2. Taking this into account, the Court

10 finds that Plaintiff has made a sufficient showing as to this factor.

11 | **E.**     **Summary**

12      Taking the foregoing factors into consideration, the Court finds that Plaintiff has

13 demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the

14 Court finds that the expedited discovery sought furthers the interests of justice and presents minimal

15 inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in

16 line with Rule 26(d).

17 | **F.**     **Joinder of 95 Defendants**

18      Having found that expedited discovery is appropriate, the question becomes whether the

19 discovery sought is proper as to all 95 Defendants. Under Rule 20, defendants may be joined in one

20 action when claims arise from the same transaction or occurrence or series of transactions or

21 occurrences, and any question of law or fact in the action is common to all defendants. Fed. R. Civ.

22 P. 20(a)(2). The permissive joinder rule "is to be construed liberally in order to promote trial

23 convenience and to expedite the final determination of disputes, thereby preventing multiple

24 lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir.

25 1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent

26 with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United*

27 *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Rule 20(a) imposes two specific

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1    requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff

2    or defendant relating to or arising out of the same transaction or occurrence, and (2) some question

3    of law or fact common to all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these

4    requirements must be satisfied in order to justify party joinder under Rule 20(a). *Id.* In situations of

5    misjoinder of parties, Rule 21 provides that "[o]n motion or on its own, the court may at any time,

6    on just terms, add or drop a party."

7            1.    Same Transaction, Occurrence, or Series of Transactions or Occurrences

8            "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of

9    transactions or occurrences' to require a degree of factual commonality underlying the claims."

10   *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)

11   (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party

12   "must assert rights . . . that arise from related activities-a transaction or an occurrence or a series

13   thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other federal

14   districts – have come to varying decisions about the proprietary of joining multiple defendants in

15   BitTorrent infringement cases. *See MCGIP*, 2011 WL 3607666, at 3 (listing a sample of recent

16   decisions). This Court has carefully reviewed such decisions and notes that they are highly

17   dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-

18   sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged

19   infringement of the protected work. Both of these factors guide the Court's joinder analysis in this

20   matter as well.

21           Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

22   detailed explanation about how the BitTorrent protocol operates. *See* Hansmeier Decl. ¶¶ 8-13. Mr.

23   Hansmeier explains:

24                   The sharing of a file via the BitTorrent protocol operates as follows.
                     First, the initial seeder creates a small "torrent" file that contains
25                   instructions for how to find the seed. The seeder uploads the torrent
                     file to one or more of the many torrent indexing sites. As Internet users
26                   come across the torrent file, they intentionally elect to load the torrent
                     files in their BitTorrent client, which uses the instructions contained in
27                   the torrent file to locate the seed. These users now are peers in the
                     swarm with respect to that digital reproduction. The BitTorrent
28

8

1
2
3
4
5
6

> protocol dictates that each peer download a random portion of the file (a "piece") from the seed. After a peer has downloaded its first piece, it then shares that piece and subsequent pieces with other peers in the swarm. The effect of this protocol is that each peer is both copying and distributing copyrighted material at the same time. That is, each peer in a BitTorrent network has acted and acts in cooperation with other peers by agreeing to provide, and actually providing, an infringing reproduction of at least a substantial portion of a copyrighted work in anticipation of the other peers doing likewise. Joining a BitTorrent network is an intentional act, requiring the selection by a peer of multiple links to do so.

7    *Id.* ¶ 11.

8         The Court finds that Plaintiff has also provided enough specificity to make a preliminary

9    determination that the 95 Doe Defendants here were part of the same swarm.  Reviewing Exhibit A

10   to Plaintiff's FAC, Defendants' alleged infringing activity occurred from May 3, 2011 through July

11   12, 2011.  FAC, Ex. A.  While this period might seem protracted, such time periods can be

12   somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the

13   same swarm, downloading and uploading the same file.  With respect to the particular swarm at

14   issue here, the hash (an alphanumeric representation of a digital file) associated with the copied

15   file's torrent file remained the same within the swarm.  FAC ¶ 7.  Further, the alleged infringers all

16   participated in the same exact swarm and downloaded the same exact copyrighted file.  Hansmeier

17   Decl. ¶ 26.  And, even after a Doe Defendant disconnects from the swarm, the parts of the file that

18   he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in

19   the swarm.  *Id.* ¶ 12.

20        Based on these allegations, Plaintiff's claims against Defendants appear logically related.

21   Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be

22   responsible for distributing the work to the other putative Defendants, who are also using the same

23   file-sharing protocol to copy the identical copyrighted material.  *See Disparte v. Corporate Exec.*

24   *Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related"

25   and this test is "flexible.").  While the Doe Defendants may be able to rebut these allegations later,

26   Plaintiff has sufficiently alleged that its claims against Defendants potentially stem from the same

27   transaction or occurrence, and are logically related.  *See Arista Records LLC v. Does 1–19*, 551 F.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

9

1   Supp. 2d 1, 11 (D.D.C. 2008) ("While the Court notes that the remedy for improper joinder is

2   severance and not dismissal, . . . the Court also finds that this inquiry is premature without first

3   knowing Defendants' identities and the actual facts and circumstances associated with Defendants'

4   conduct.").  Plaintiff has made a preliminary showing that these Defendants were present in the

5   same *FTV Danielle: Candid Series - My Amateur Hardcore* swarm on BitTorrent and shared pieces

6   of the same seed file containing *FTV Danielle: Candid Series - My Amateur Hardcore*.

7           2.      Question of Law or Fact Common to All Defendants

8           Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

9   common question of law or fact.  Here, Plaintiff will have to establish the same legal claims

10  concerning the validity of the copyright in *FTV Danielle: Candid Series - My Amateur Hardcore*

11  and the infringement of the exclusive rights reserved to Plaintiff as copyright holder.  Furthermore,

12  Plaintiff alleges that Defendants utilized the same BitTorrent file-sharing protocol to illegally

13  distribute and download *FTV Danielle: Candid Series - My Amateur Hardcore* and, consequently,

14  factual issues related to how BitTorrent works and the methods used by Plaintiff to investigate,

15  uncover, and collect evidence about the infringing activity will be essentially identical for each

16  Defendant.  *See Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C.

17  2011).  The Court recognizes that each putative defendant may later present different factual and

18  substantive legal defenses, "but that does not defeat, at this stage of the proceedings, the

19  commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)."  *Id.*

20          3.      Prejudice to Any Party or Needless Delay

21          Finally, the Court must assess whether joinder would prejudice the parties or result in

22  needless delay.  Joinder in a single case of putative defendants who allegedly infringed the same

23  copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

24  defendants.  *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

25  2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

26  similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

27  share copyrighted sound recordings and the discovery of defendants' identities through the use of a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

10

1   Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

2   efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

3   any, that other John Does have raised.").

4          Here, Plaintiff seeks to obtain identifying information from ISPs so that it can properly name

5   and serve Defendants.  If the Court were to consider severance at this juncture, Plaintiff would face

6   significant obstacles in its efforts to protect its copyright from illegal file-sharers, and this would

7   only needlessly delay the case.  Plaintiff would be forced to file 95 separate lawsuits, in which it

8   would then move to issue separate subpoenas to ISPs for each defendant's identifying information.

9   Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases,

10   which would further limit its ability to protect its legal rights.  "This would certainly not be in the

11   'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive

12   determination of the action.'"  *Call of the Wild*, 770 F. Supp. 2d at 334 (citation omitted) (declining

13   to sever defendants where parties joined promotes more efficient case management and discovery

14   and no party prejudiced by joinder).

15          Further, Defendants are currently identified only by their IP addresses and are not named

16   parties.  Consequently, they are not required to respond to Plaintiff's allegations or assert a defense.

17   Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case against them,

18   but they cannot demonstrate any harm that is occurring to them before that time.  *Id.*

19          Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

20   permissive joinder under Rule 20(a)(2).  The putative defendants are not prejudiced but likely

21   benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

22   material and seek redress from Defendants, who have allegedly engaged in infringing activity.  To

23   be fair, the Court recognizes that the questions of joinder and severance must be deferred until after

24   discovery has been authorized and any motions to quash filed.  The Court is also cognizant of the

25   logistical and administrative challenges of managing a case with numerous putative defendants, a

26   number of whom may seek to file papers pro se.  However, severing the putative defendants at this

27   early stage is no solution to ease the administrative burden of the cases.  The Court therefore

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

11

1 declines to sever the Doe Defendants at this time.

2 ## V.  CONCLUSION

3      For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

4 Expedited Discovery (Dkt. No. 7) as follows:

5      1.  IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on

6 Does 1-95's ISPs listed in Exhibit A to the Amended Complaint by serving a Rule 45 subpoena that

7 seeks information sufficient to identify the Doe Defendants, including the name, address, telephone

8 number, and email address of Does 1-95.  Plaintiff's counsel shall issue the subpoena and attach a

9 copy of this Order.

10      2.  IT IS FURTHER ORDERED that each ISP will have 30 days from the date of service

11 upon it to serve Does 1-95 with a copy of the subpoena and a copy of this Order.  The ISPs may

12 serve the Doe Defendants using any reasonable means, including written notice sent to his or her last

13 known address, transmitted either by first-class mail or via overnight service.

14      3.  IT IS FURTHER ORDERED that Does 1-95 shall have 30 days from the date of service

15 upon him, her, or it to file any motions in this Court contesting the subpoena (including a motion to

16 quash or modify the subpoena).  If that 30-day period lapses without Does 1-95 contesting the

17 subpoena, the ISP shall have 10 days to produce the information responsive to the subpoena to

18 Plaintiff.

19      4.  IT IS FURTHER ORDERED that, because no appearance by a person at a deposition is

20 required by the subpoena, instead only production of documents, records and the like is required, the

21 witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not

22 apply and no such fees need be tendered.  Any ISP that receives a subpoena pursuant to this Order

23 shall confer with Plaintiff and shall not assess any charge in advance of providing the information

24 requested in the subpoena.  The ISP that receives a subpoena and elects to charge for the costs of

25 production shall provide a billing summary and cost reports that serve as a basis for such billing

26 summary and any costs claimed by the ISP.

27      5.  IT IS FURTHER ORDERED that the subpoenaed entity shall preserve all subpoenaed

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1    information pending the ISP's delivering such information to Plaintiff or the final resolution of a

2    timely filed and granted motion to quash the subpoena with respect to such information.

3        6.  IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

4    subpoena may be used by Plaintiff solely for the purpose of protecting its rights under the Copyright

5    Act, 17 U.S.C. §§ 101-1322.

6        7.  IT IS FURTHER ORDERED that Plaintiff shall serve each Doe Defendant with the

7    summons, complaint, and other documents required by Civil Local Rule 4-2 within 120 days of

8    learning that Doe's identity.

9        8.  IT IS FURTHER ORDERED that should Plaintiff engage in settlement negotiations with

10   any Doe Defendant, it shall not assert that that Doe is being sued in San Francisco, unless Plaintiff

11   believes that Doe to be a resident of this District or has a good faith belief, consistent with Federal

12   Rule of Civil Procedure 11(b), that it can otherwise establish personal jurisdiction over that Doe in

13   this District.

14       9.  IT IS FURTHER ORDERED that subpoenas authorized by this Order and issued pursuant

15   thereto shall be deemed appropriate court orders under 47 U.S.C. § 551.  In particular, 47 U.S.C. §

16   551(c)(2)(B) provides as follows:

17   (c) Disclosure of personally identifiable information

18           ***

19           (2) A cable operator may disclose such information if the disclosure is . . .

20           ***

21           (B) subject to subsection (h) [relating to disclosures to governmental
             agencies] of this section, made pursuant to a court order authorizing such
22           disclosure, if the subscriber is notified of such order by the person to whom
             the order is directed.

23

24   This Order is an order authorizing such disclosure.

25       **IT IS SO ORDERED.**

26   Dated: October 7, 2011

27   _____
     Maria-Elena James
     Chief United States Magistrate Judge

28

13